## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| R.M.M., a minor child, by and through her Mother and Natural Guardian, Theresa Morales,<br><br>        Plaintiffs,<br><br>v.<br><br>Minneapolis Public Schools, Special School District No. 1; and Minneapolis School Board,<br><br>        Defendants. | Civil No. 15-CV-1627 (SRN/HB)<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |
| Special School District No. 1, Minneapolis Public Schools,<br><br>        Plaintiff,<br><br>v.<br><br>R.M.M., by and through her parents, O.M. and T.M.,<br><br>        Defendants. | Civil No. 15-CV-1855 (SRN/HB)<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

Amy J. Goetz and Andrea L. Jepsen, School Law Center, LLC, 452 Selby Avenue, Suite 2E, Saint Paul, Minnesota 55102, for R.M.M., by and through her parents, O.M. and T.M.

Laura Tubbs Booth, Roseann T. Schreifels, and Gregory Maus, Booth Law Group LLC, 10520 Wayzata Boulevard, Suite 200, Minnetonka, Minnesota 55305, for Minneapolis Public Schools, Special School District No. 1.

SUSAN RICHARD NELSON, United States District Judge

## I.   INTRODUCTION

This matter is before the Court on three motions in the above-captioned related cases:  R.M.M.'s Motion to Dismiss in Civil No. 15-CV-1855 [Doc. No. 8]; Minneapolis Public Schools' Motion for Judgment on the Administrative Record in Civil No. 15-CV-1855 [Doc. No. 18]; and R.M.M.'s Motion to Reverse Dismissal of Claims and for Partial Remand in Civil No. 15-CV-1627 [Doc. No. 33].  For the reasons stated below, R.M.M.'s Motions are granted and the Minneapolis Public Schools' Motion is denied.

## II.   BACKGROUND

These lawsuits arise out of the alleged failure of Minneapolis Public Schools, Special School District No. 1 ("MPS") to timely and appropriately identify and evaluate R.M.M. as a student with learning disabilities, and to provide her with timely and appropriate special education services.  (See, e.g., Verified Compl. [Civ. No. 15-1627, Doc. No. 1] ("R.M.M. Compl.") ¶ 5; Compl. [Civ. No. 15-1855, Doc. No. 1] ("MPS Compl.") ¶¶ 31–32.)  Briefly stated,[1] MPS provides special education services to students enrolled in both public and private schools located within the District.  (MPS Compl. ¶ 3.)  R.M.M. is a minor who resides within the District and who was voluntarily enrolled in Annunciation Catholic School ("ACS"), a private school within the District, from kindergarten through fifth grade. (See id. ¶¶ 5–6; R.M.M. Compl. ¶¶ 1, 4.)

---

[1]     The pending motions raise legal issues that are mostly independent of the facts. Accordingly, the Court will summarize background information only to the extent necessary to provide context for the Court's rulings, citing to the facts in the complaints about which there is general agreement.

During elementary school, R.M.M. struggled in the classroom, especially with reading.  (See, e.g., R.M.M. Compl. ¶¶ 57–63, 89; MPS Compl. ¶ 7.)  She received extra support and instruction at ACS, and she was referred to MPS for a special education evaluation in the fifth grade.  (See, e.g., R.M.M. Compl. ¶¶ 58, 84; MPS Compl. ¶¶ 8–10.)  That evaluation was completed on January 6, 2014, and it was determined that R.M.M. was eligible for special education services in the areas of reading and writing.  (See R.M.M. Compl. ¶ 85; MPS Compl. ¶ 10.)  The individual service plan ("ISP") that was developed for R.M.M. provided for one hour of direct instruction, twice per week, at a MPS school located near ACS, to which R.M.M. would be bused during the middle of the school day.  (See R.M.M. Compl. ¶ 90; MPS Compl. ¶¶ 13–14.)  In order to receive these services, R.M.M. was enrolled in MPS in February 2014.  (MPS Compl. ¶ 11.)  The extra instruction commenced in March 2014, but R.M.M.'s parents declined further services after four sessions.  (See R.M.M. Compl. ¶¶ 90, 92; MPS Compl. ¶¶ 15–16.)  ACS subsequently informed R.M.M.'s parents that it could not meet R.M.M.'s needs and encouraged them to enroll R.M.M. in MPS.  (See R.M.M. Compl. ¶¶ 93, 95, 98; MPS Compl. ¶ 17.)  R.M.M.'s parents complied.  (See R.M.M. Compl. ¶ 98; MPS Compl. ¶ 18.)

Thereafter, on August 14, 2014, R.M.M.'s parents filed a complaint with the Minnesota Department of Education ("MDE"), alleging that MPS had violated its location, identification, and evaluation obligations under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq., (R.M.M.'s "child-find" claim), as well as Section 504 of the Rehabilitation Act of 1973, and they requested an administrative due process hearing.  (See R.M.M. Compl. ¶ 43; MPS Compl. ¶¶ 18, 28.)  On October 6, 2014,

R.M.M.'s parents amended their complaint to include a claim that R.M.M. had been denied

a free appropriate public education ("FAPE") while she was enrolled at ACS (R.M.M.'s

"FAPE" claim).  (See R.M.M. Compl. ¶ 45; MPS Compl. ¶¶ 31.)

The matter was assigned to Administrative Law Judge James Mortenson (the

"ALJ").  (See MPS Compl. ¶ 29.)  On October 14, 2014, the ALJ dismissed as moot the

child-find claim because R.M.M. had been identified, evaluated, and determined to be a

child with a disability.  (Goetz Aff. [Civ. No. 15-1627, Doc. No. 35], Ex. A (Fifth

Prehearing Order) ("ALJ October 14 Order"), at 1, 4.)  And, on October 17, 2014, the ALJ

narrowed the issue for resolution as follows:

> The issue to be determined in this case is whether the School District denied
> the Student a FAPE when it refused or failed to propose an individualized
> education program (IEP) reasonably calculated to meet Student's unique
> needs resulting from her disability and to enable her to be involved in and
> make progress in the general education curriculum, when she was determined
> to be a child with a disability in January 2014.

(Id., Ex. B (Sixth Prehearing Order) ("ALJ October 17 Order"), at 2.)  R.M.M.'s parents

then moved for reconsideration of the October 14 and 17 Orders, and MPS moved for

dismissal of all claims.  (Id., Ex. C (Seventh Prehearing Order), at 1.)  In the latter motion,

MPS argued that parents in Minnesota who enroll their children in private school do not

have the right to a due process hearing on issues other than child find.  (See id. at 5.)

The ALJ denied both motions, (id. at 1), and a due process hearing was held on

December 2, 3, and 5, 2014, (MPS Compl., Ex. A (Findings of Fact, Conclusions of Law

and Order) ("ALJ Final Order"), at 2).  The ALJ issued his Findings of Fact, Conclusions of

Law and Order on January 2, 2015, concluding that:

> The School District denied the Student a FAPE when it proposed an individualized services plan (ISP) to the Parents in February 2014, which was not reasonably calculated to meet the unique needs of the [S]tudent resulting from her disability and was not designed to enable her to be involved in and make progress in the general education curriculum.

(Id. at 3.) He further determined that compensatory education was a viable and appropriate remedy and ordered MPS to provide or pay for a set amount of additional instruction for R.M.M. in reading, writing, and mathematics. (Id. at 11, 17–18.)

On March 27, 2015, R.M.M.'s parents initiated the first of the present lawsuits, seeking reversal of the ALJ's October 14 and 17 Orders dismissing their child-find claim and dismissing their FAPE claim to the extent that it arose prior to January 2014 (Count I). (See R.M.M. Compl. ¶¶ 47, 109, 113.) In other words, they are appealing the ALJ's pre-hearing rulings. They also assert claims against MPS and the School Board for discrimination in violation of the Americans with Disabilities Act (Count II) and in violation of Section 504 of the Rehabilitation Act of 1973 (Count III).[2] (See id. ¶¶ 122–51.) On April 2, MPS initiated its lawsuit appealing the ALJ's January 2, 2015 due process hearing decision on the grounds that the ALJ lacked jurisdiction over R.M.M.'s FAPE claims and erroneously determined that R.M.M. was entitled to compensatory education. (See MPS Compl. ¶¶ 1, 38–43.)

The parties then filed the three Motions currently pending before this Court. In the case initiated by MPS, R.M.M.'s parents brought a Motion to Dismiss MPS's Complaint

---

[2]    R.M.M.'s parents initially asserted several claims against ACS, as well, (see R.M.M. Compl. ¶¶ 135–71), but ACS is no longer a party to this lawsuit, (see Order Approving and Sealing Minor Settlement and for Partial Dismissal with Prejudice, dated Jan. 7, 2016 [Civ. No. 15-1627, Doc. No. 59]).

pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that there is no legal authority

to support MPS's claims.  (Defs.' Mem. of Law in Supp. of Mot. to Dismiss [Civ. No. 15-

1855, Doc. No. 10] ("R.M.M.'s Dismissal Mem."), at 2.)  For its part, MPS brought a

Motion for Judgment on the Administrative Record pursuant to Rule 12(c), arguing that the

ALJ lacked jurisdiction over R.M.M.'s FAPE claims because private school students do not

have an individual right to a FAPE or to a due process hearing.  (Pl.'s Mem. of Law in

Supp. of Mot. for J. on the Admin. Record [Civ. No. 15-1855, Doc. No. 21] ("MPS Appeal

Mem."), at 2–3.)  Even if there is a right to a due process hearing, MPS argues that

R.M.M.'s claims are barred because her parents removed her from the MPS school district

before requesting that hearing, and that the award of compensatory education was improper.

(See id. at 28–34.)

In the case initiated by R.M.M.'s parents, R.M.M.'s parents filed a Motion to

Reverse Dismissal of Claims and for Partial Remand.  They seek remand to the ALJ for an

administrative hearing on the dismissed child-find and FAPE claims so that they may fully

exhaust their IDEA claims and remedies.  (Pls.' Mem. in Supp. of Mot. to Reverse

Dismissal of Claims and for Partial Remand [Civ. No. 15-1627, Doc. No. 34] ("R.M.M.'s

Remand Mem."), at 6.)[3]  All three Motions were heard on August 25, 2015.

---

[3]     R.M.M.'s parents assert that the discrimination claims that are also part of their
lawsuit should remain pending until the IDEA claims are fully exhausted.  (R.M.M.'s
Remand Mem. at 6 n.21.)

### III.    R.M.M.'S MOTION TO DISMISS AND MPS'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Under the IDEA, a party aggrieved by an ALJ's decision has "the right to bring a civil action with respect to the complaint presented pursuant to [the IDEA], which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy."  20 U.S.C. § 1415(i)(2)(A). The party challenging the ALJ's decision bears the burden of proof.  E.S. v. Indep. Sch. Dist. No. 196, 135 F.3d 566, 569 (8th Cir. 1998).  The court "is to make an independent decision of the issues based on a preponderance of the evidence, giving 'due weight' to the state administrative proceedings," Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 610 (8th Cir. 1997) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 205–06 (1982)), but the court applies a de novo standard of review to questions of law, see Jana K. ex rel. Tim K. v. Annville-Cleona Sch. Dist., 39 F. Supp. 3d 584, 594 (M.D. Pa. 2014) (citing Warren G. v. Cumberland Cnty. Sch. Dist., 190 F.3d 80, 83 (3d Cir. 1999)) ("The district court's review of the hearing officer's application of legal standards and conclusions of law . . . is subject to plenary review."); C.T. v. Verona Bd. of Educ., 464 F. Supp. 2d 383, 385 (D.N.J. 2006) ("When reviewing an ALJ decision in an IDEA case, the district court applies a de novo standard to questions of law.").

There are three main issues raised in R.M.M.'s Motion to Dismiss[4] and MPS's Motion for Judgment on the Administrative Record:   (1) whether a parentally-placed

---

[4]      As a preliminary matter, MPS disputes whether a motion to dismiss under Rule 12(b)(6) is the proper vehicle by which to challenge its Complaint, which really is an administrative appeal.  (See Pl.'s Mem. of Law Opposing Defs.' Mot. to Dismiss [Civ. No.

private school student has an individual right to a FAPE and a due process hearing;

(2) whether R.M.M.'s claims are barred based on the timing of her request for a due process

hearing; and (3) whether an award of compensatory education was permissible.  The Court

will address each issue below.

### A.    Private School Students' Right to a FAPE and a Due Process Hearing

The main issue presented by R.M.M.'s Motion to Dismiss and MPS's Motion for

Judgment on the Administrative Record is whether parentally-placed private school students

in Minnesota have the individual right to a FAPE and a due process hearing under the

IDEA.  "The IDEA seeks to ensure that all disabled children receive a free appropriate

public education (FAPE) designed to meet their needs. . . . To that end, the IDEA provides

federal money to state and local education agencies in order to assist them in educating

handicapped children on the condition that the states and local agencies implement the

substantive and procedural requirements of the Act."  C.N. v. Willmar Pub. Sch., 591 F.3d

624, 630 (8th Cir. 2010) (citations and internal quotation marks omitted).  "If state

_____

15-1855, Doc. No. 14], at 3.)  MPS argues that it has a statutory right of appeal and so the
federal pleading rules do not apply.  (See Letter from R. Schreifels, dated Sept. 24, 2015
[Civ. No. 15-1855, Doc. No. 38], at 4.)  R.M.M.'s parents, on the other hand, argue that
there is no authority for the proposition that Rule 12(b)(6) does not apply in the present
situation.  (See Letter from A. Goetz, dated Sept. 9, 2015 [Civ. No. 15-1855, Doc. No. 35],
at 1.)  Because R.M.M.'s Motion to Dismiss raises purely legal issues—i.e., whether
private school students have the individual right to a FAPE or a due process hearing and,
consequently, whether the ALJ had subject matter jurisdiction over R.M.M.'s FAPE
claims—and because Rule 12(b)(6) motions can be used to dismiss actions based on flawed
legal premises, Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001) (stating that
"dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their
legal premises and deigned to fail"), the Court will proceed to rule on R.M.M.'s Motion to
Dismiss in its current form.

legislation implementing IDEA creates a higher standard than the federal minimum, an individual may bring an action under the federal statute seeking to enforce the state standard." Gill v. Columbia 93 Sch. Dist., 217 F.3d 1027, 1035 (8th Cir. 2000). Accordingly, the present matter requires the interpretation and application of both the federal IDEA and the related Minnesota statutes.

### 1.     Federal law

Under the IDEA, a state is eligible to receive federal funding only if it has policies and procedures in place to ensure that "[a] free appropriate public education is available to all children with disabilities residing in the State," 20 U.S.C. § 1412(a)(1)(A),[5] and that "[a]ll children with disabilities residing in the State, including . . . children with disabilities attending private schools, . . . are identified, located, and evaluated," id. § 1412(a)(3)(A). The latter requirement is referred to as "child find" and must be "designed to ensure the equitable participation of parentally placed private school children with disabilities." Id. § 1412(a)(10)(A)(ii)(II).  As for the former requirement, the term "free appropriate public education," or "FAPE," means special education and services that:

(A)     have been provided at public expense, under public supervision and direction, and without charge;

(B)     meet the standards of the State educational agency;

(C)     include an appropriate preschool, elementary school, or secondary school education in the State involved; and

---

[5]     There are limited exceptions to this requirement, none of which are relevant here. See 20 U.S.C. § 1412(a)(1)(B).

(D)    are provided in conformity with the individualized education program required under section 1414(d) of this title.

Id. § 1401(9).  And, an "individualized education program," or "IEP," is a written statement of the disabled child's academic and functional performance and goals, as well as the services and accommodations to be provided to the child.  Id. § 1414(d)(1)(A)(i). An IEP is developed by an IEP Team, which consists of, among other individuals, the child's parents, the child's regular and special education teachers, and a representative of the local educational agency ("LEA").  Id. § 1414(d)(1)(B).

In addition to the foregoing, the IDEA establishes certain procedural safeguards. Id. § 1412(a)(6).  For example, "any party" is entitled to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  Id. § 1415(b)(6)(A).  And, the parents or LEA involved in such complaints are entitled to an impartial due process hearing conducted by the state educational agency ("SEA") or LEA.  Id. § 1415(f)(1)(A).

While a state must make a FAPE available to all students residing in the state in order to satisfy the IDEA's requirements, the federal regulations implementing the IDEA explicitly provide that "[n]o parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school."  34 C.F.R. § 300.137(a); see 20 U.S.C. § 1412(a)(10)(C)(i) (stating that a LEA is not required "to pay for the cost of education, including special education and related services, of a child with a disability at a private

10

school or facility if that agency made a [FAPE] available to the child and the parents elected to place the child in such private school or facility").  For such children, "the IDEA only requires districts to provide services proportional to those provided to public-school students."  Indep. Sch. Dist. No. 281 v. Minn. Dep't of Educ., 743 N.W.2d 315, 324 (Minn. Ct. App. 2008).  The ultimate decision about the services to be provided to these children is made by the LEA, after consultation with private school officials and representatives of the child's parents.  34 C.F.R. § 300.137(b)(2).

And, while the due process hearing procedures apply to child-find claims raised by parentally-placed private school students and their parents, see id. § 300.140(b)(1), as well as to "[d]isagreements between the parents and a public agency regarding the availability of a program appropriate for the child," id. § 300.148(b), those procedures do not apply to claims by such persons relating to the LEA's provision of proportional services, see id. § 300.140(a).  Rather, complaints that an LEA has failed to provide equitable services must proceed through the SEA's complaint process.  Id. § 300.140(c)(1).

### 2.  State law

Although "[t]he federal IDEA does not require school districts to provide a FAPE to disabled students voluntarily enrolled in nonpublic schools[,] . . . the federal law represents minimum requirements, and states are free to impose additional requirements for special education services."  Indep. Sch. Dist. No. 281, 743 N.W.2d at 324.  Under Minnesota law, "all children with a disability"[6] are entitled to "special instruction and services," which

---

[6]    A "child with a disability" is "a child identified under federal and state special education law as . . . having a . . . specific learning disability . . . and who needs special

means "a free appropriate public education."  Minn. Stat. § 125A.03(a).  And, a "free

appropriate public education" means special education services that:

> (1)     are provided at public expense, under public supervision and direction, and without charge;
>
> (2)     meet the standards of the state, including the requirements of the Individuals with Disabilities Education Act, Part B or C;
>
> (3)     include an appropriate preschool, elementary school, or secondary school education; and
>
> (4)     are provided to children ages three through 21 in conformity with an individualized education program that meets the requirements of the Individuals with Disabilities Education Act . . . .

Id. (footnote omitted).  For children attending a nonpublic school at their parent's choice,

the school district must determine on a student-by-student basis the location at which to

provide the special instruction and services, id. § 126C.19, Subd. 4(b), but "[n]o resident of

a district . . . may be denied instruction and service on a shared time basis[7] . . . because of

attending a nonpublic school," id. § 125A.18.

As for dispute resolution, the Minnesota Statutes provide that "[a] parent or a district

is entitled to an impartial due process hearing conducted by the state when a dispute arises

over the identification, evaluation, educational placement, . . . or the provision of a free

appropriate public education to a child with a disability."  Id. § 125A.091, Subd. 12.  This

due process hearing system is explicitly made available to "[p]arties serving students on a

_____

education and related services."  Minn. Stat. § 125A.02, Subd. 1.

[7]     Thus, "shared time pupils" are students who attend public school programs for part of the regular school day and who attend a nonpublic school for part of the school day. Minn. Stat. § 126C.01, Subd. 8.

shared time basis." Id. § 125A.18 ("Parties serving students on a shared time basis have access to the due process hearing system described under United States Code, title 20, and the complaint system under [34 C.F.R. §§ 300.151 through 300.153].").

### 3.    R.M.M.

In the present Motions, MPS argues that the IDEA distinguishes between children attending public school versus children voluntarily attending private school and that, under the federal regulations, an ALJ has jurisdiction to hold a due process hearing only as to child-find claims for private school children.  (See MPS Appeal Mem. at 12–15.) According to MPS, all other claims brought on their behalf are subject to the state complaint resolution process, and the ALJ erred by retaining jurisdiction over R.M.M.'s FAPE claims once he had dismissed the child-find claims.  (See id.)  In addition, MPS argues that the Minnesota Statutes do not create rights beyond those conferred by the IDEA but, instead, merely parallel the IDEA's requirements.  (Id. at 15–17.)  More specifically, MPS states that, under either statute, a school district may not deny a student a FAPE because the student is enrolled in private school, but that there are limitations on the services provided to a child with disabilities when a parent rejects the FAPE available in the public school.  (Id. at 17–18.)  In addition, MPS asserts that Minnesota's requirement for a school district to make special instruction and services available to private school students does not confer an individual right to a due process hearing.  (Id. at 24–25.)  Finally, MPS argues that the MDE has not provided notice that state requirements exceed the IDEA's requirements, as the MDE would be obligated to do per federal regulation.  (See id. at 19–21, 25–28; MPS Appeal Reply at 3–4.)

R.M.M.'s parents, on the other hand, argue that the IDEA provides a forum for "any party to present a complaint" regarding child find or the provision of a FAPE, without any exception based on the child's school of enrollment.  (R.M.M.'s Dismissal Mem. at 6–7.)  They assert that, under the implementing regulations, parents have no right to challenge the determination of appropriate "equitable services" to be provided to children placed in private schools because those decisions are made unilaterally by the LEA based on an objective funding formula, but that parents do have the right to challenge whether a FAPE was provided because that determination is made by a team of educators and parents and is based on the child's individual needs.  (Id. at 10.)  Although R.M.M.'s parents acknowledge that the regulations do not provide an individual right to a FAPE for parentally-placed private school children with disabilities, they contend that the limitation applies only in states that adhere to the federal minimum standards and not to states that provide services exceeding those standards.  (Id. at 8–9.)  Relying heavily on Independent School District No. 281 v. Minnesota Department of Education, 743 N.W.2d 315 (Minn. Ct. App. 2008), R.M.M.'s parents argue that Minnesota falls in the latter category, and that parentally-placed private school children with disabilities in Minnesota have an individual right to a FAPE.  (Id. at 9, 11–12.)  In addition, R.M.M.'s parents argue that Minnesota law provides an administrative hearing system that parallels the IDEA and ensures access to a due process hearing for any dispute regarding child find or FAPE, and that there is no exception for parentally-placed private school children.  (Id. at 12–13.)

The Court agrees with R.M.M.'s parents and finds that, under the plain language of the IDEA and Minnesota Statutes, Minnesota school districts are required to provide a

FAPE to parentally-placed private school students, and the parents of such students are entitled to a due process hearing as to whether a FAPE was, in fact, provided. First, there is no dispute that the IDEA and implementing regulations provide that a FAPE must be made available to "all children with disabilities." 20 U.S.C. § 1412(a)(1)(A). That being said, if parents forgo the FAPE and choose to enroll their children in a private school, those children are not entitled to the same amount of services under the IDEA and instead will receive "equitable services" provided through proportionate-share funding, as determined by the LEA. See 20 U.S.C. §§ 1412(a)(10)(A)(i), 1412(a)(10)(C)(i); 34 C.F.R. § 300.137.

There also is no dispute that the IDEA requires SEAs to establish procedures to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a FAPE, including an opportunity for "any party" to present a complaint and receive a due process hearing with respect to any matter relating to child find or the provision of a FAPE.   20 U.S.C. §§ 1412(a)(6), 1415(b)(6), 1415(f)(1)(A). Again, there is no exception to this entitlement based on the child's school of enrollment. The only distinction on that basis is found in the regulations—i.e., if a child is voluntarily enrolled in private school, that child is not entitled to a due process hearing as to the particular equitable services provided. See 34 C.F.R. § 300.140(a). Claims regarding those services must proceed through the state complaint process. Id. § 300.140(c)(1).

While the Eighth Circuit cases relied upon by MPS reiterate the first point—i.e., that, under federal law, children voluntarily placed in private schools have no individual

right to a FAPE while attending private school, and the school district satisfies its

obligations by simply making a FAPE available at a public school—they do not speak to

the due process hearing issue.  See John T. v. Marion Indep. Sch. Dist., 173 F.3d 684,

691 (8th Cir. 1999); Peter v. Wedl, 155 F.3d 992, 998 (8th Cir. 1998); Foley v. Special

Sch. Dist. of St. Louis Cnty., 153 F.3d 863, 865 (8th Cir. 1998).  The district court's

opinion in E.W. v. School Board of Miami-Dade County, 307 F. Supp. 2d 1363 (S.D. Fla.

2004), does, however.

        In E.W., the parents of a student voluntarily enrolled in private school in Florida

objected to the school district's IEP that placed their child in a therapy program at a

public school, and they opted to keep their child enrolled at his private school.  307 F.

Supp. 2d at 1366.  The parents requested a due process hearing, and the ALJ found that

the IEP provided the child with a FAPE.  Id. at 1367.  The parents then filed a complaint

in federal court, seeking review of the ALJ's decision and an order compelling the school

district to pay for certain services for the child.  Id.  The school district brought a motion

to dismiss, arguing that the court lacked subject matter jurisdiction to determine what

services were to be provided to the child while he attended private school.  Id. at 1368.

The court stated:

        Under § 1415(f), parents of a disabled child enrolled in private
        school are entitled to a due process hearing where they may challenge
        whether the proposed IEP provides their child with a FAPE.  Once a final
        order has been issued pursuant to the due process hearing, § 1415(i)(2)
        allows the aggrieved party to appeal that decision in any district court
        regardless of the amount in controversy.  On appeal, "the party seeking
        reversal of the ALJ's determination . . . [has] the burden of proving that the
        [ ] IEP was inappropriate."  Justin G. v. Bd. of Educ. of Montgomery
        County, 148 F. Supp. 2d 576, 587 (D. Md. 2001) (citing Barnett v. Fairfax

County Sch. Bd., 927 F.2d 146, 152 (4th Cir. 1991)).  If the district court finds that the IEP provided the child with a FAPE, judicial review ends. Loren F., 349 F.3d at 1312 (11th Cir. 2003).

[I]f the court concludes that FAPE was not provided, parents may seek reimbursement from the school district for private school tuition under § 1412(a)(10)(C)(ii). Id. . . .

. . . .

However, a child enrolled in private school does not have "an individual right to receive some or all of the special education and related services that the child would receive if enrolled in public school."  34 C.F.R. Pt. 300.454(a).  Moreover, due process hearings are not available for complaints about the inadequacy of the proportional funding of services for private school special education students or the provision of specific services to such students.  34 C.F.R. Pt. 300.457(a); see also Gary S. v. Manchester Sch. Dist., 241 F. Supp. 2d 111, 115 (D.N.H. 2003).  Instead, the determination of what specific services a child enrolled in private school may be entitled to is governed by a State complaint resolution procedure under 34 C.F.R. Pt. 300.457(c); see also Gary S., 241 F. Supp. 2d at 115.

Id. at 1369–70.  Therefore, the court affirmed the ALJ's determination that the parents were only entitled to a due process hearing as to the adequacy of the IEP and not as to the specific services that the child might be entitled to while enrolled in the private school.

See id. at 1370.[8]  This Court agrees with the reasoning set forth in E.W. and likewise

---

[8]     Both the federal Office of Special Education Programs and the MDE also have stated that, although the IDEA and implementing regulations limit due process hearings for parents of students voluntarily enrolled in private school, those hearings are available where the parents are challenging whether a FAPE was made available.  (See Booth Aff. [Civ. No. 15-1855, Doc. No. 31], Ex. 1 (Office of Special Education Programs, Dispute Resolution Procedures Under Part B of the IDEA, dated July 23, 2013, at 30) (stating that the IDEA's due process provisions "do not apply to issues regarding the provision of services to any particular parentally-placed private school child with disabilities whom an LEA has agreed to serve because there is no individual right to services for such children under the IDEA," but that they do apply to the issue of whether a FAPE was made available to such children if the parents seek reimbursement for the private school placement);

concludes that, strictly under federal law, parentally-placed private school students have no individual right to a FAPE and so are entitled to a due process hearing only regarding whether a school district made a FAPE available at a public school, and not regarding the services provided if that FAPE was rejected.

Under the Minnesota Statutes, however, "all children with a disability" are entitled to a FAPE and, according to Minnesota Statutes § 125A.18, this language includes children who attend private school on a shared-time basis. Thus, although a school district in Minnesota is allowed to choose the location of the special education and services provided to a parentally-placed nonpublic school student, Minnesota law goes beyond federal requirements by requiring a full FAPE for those students rather than simply the provision of "equitable" services. The Minnesota Court of Appeals' decision in Independent School District No. 281 v. Minnesota Department of Education, 743 N.W.2d 315 (Minn. Ct. App. 2008), confirms this analysis.[9]

---

Schreifels Aff. [Civ. No. 15-1855, Doc. No. 21-2], Ex. 4 (MDE Memorandum, dated Nov. 21, 2001, at 1) (stating that the federal regulations limit due process hearings for parents of private school students to child-find and evaluation issues, except where the parents are challenging whether a FAPE was made available to their child).)

[9]     The MDE also has acknowledged that "Minnesota law exceeds federal requirements for services to a student with a disability who is placed by parents in a nonpublic school" by "obligat[ing] school districts to stand ready to serve students enrolled in nonpublic schools." (Schreifels Aff. [Civ. No. 15-1855, Doc. No. 21-2], Ex. 3 (MDE Memorandum, dated Nov. 7, 2001, at 1); see also id., Ex. 2 (MDE Order, dated Feb. 12, 2014, Complaint File No. 14-019C, at 9) (concluding that the school district had not violated federal or state law where it "[stood] ready to provide special education instruction and services to the [parentally-placed private school] Student as required under Minn. Stat. § 125A.18 [the shared-time statute]," but "the Complainants chose not to avail the Student to the services offered"); id., Ex. 1 (MDE Memorandum, dated Dec. 7, 1999, at 2) (stating that a school district must "stand[] read to provide a FAPE" to students voluntarily attending nonpublic

In <u>Independent School District No. 281</u>, the school district determined that a child voluntarily enrolled at a nonpublic school in the district qualified for special education and related services.  743 N.W.2d at 320.  The school district prepared an IEP, which described the special education services that the student would receive and indicated that extended school year ("ESY") services would not be required.  <u>Id.</u>  The child's parents asked the district to reconsider provision of the ESY services, but the district denied the request on the grounds that nonpublic school students do not receive ESY services and do not have an individual right to special education services.  <u>Id.</u>

The child's parents filed a complaint with the MDE, asserting that the district's failure to provide ESY services violated state and federal law.  <u>Id.</u>  The MDE agreed, finding that the district's policy of unilaterally limiting the special instruction and services available to disabled, nonpublic school students violated Minnesota Statutes §§ 125A.03 and 125A.18.  <u>Id.</u> at 319.  The district appealed to the Minnesota Court of Appeals, raising several issues, including whether "Minnesota law require[s] school districts to provide special instruction and services to students with disabilities attending nonpublic schools."  <u>Id.</u> at 321.  In that regard, the district argued that "nonpublic-school students do not have an individual right to a FAPE."  <u>Id.</u> at 324.

Reviewing this issue of statutory construction de novo, the Minnesota Court of Appeals stated:

> The federal IDEA does not require school districts to provide a FAPE to disabled students voluntarily enrolled in nonpublic schools.  20

schools).)

U.S.C. § 1412(a)(10)(C)(i) (Supp V.2005).  Rather, the IDEA only requires districts to provide services proportional to those provided to public-school students.  20 U.S.C. § 1412(a)(10)(A)(i)(I) (Supp.V. 2005); 34 C.F.R. § 300.453(a)(1) (2006).   But, the federal law represents minimum requirements, and states are free to impose additional requirements for special education services.   Bonney, 705 N.W.2d at 214;  34 C.F.R. § 300.453(d) (2006) ("State and local educational agencies are not prohibited from providing services to private school children with disabilities in excess of those required by this part, consistent with State law or local policy.").

In its complaint decision, the MDE concluded that "[t]he District violated Minn. Stat. §§ 125A.03 and 125A.18 when it limited special instruction and services provided to all non-public school students residing in the District."  Minn. Stat. § 125A.03(a) requires the district to "provide special instruction and services . . . for all children with a disability," and defines "special instruction and services" as meaning "a free and appropriate public education provided to an eligible child with disabilities and includes special education and related services defined in the Individuals with Disabilities Education Act, subpart A, section 300.24."  Minn. Stat. § 125A.18, referred to in this opinion as the shared-time statute, governs the provision of special instruction and services for students with disabilities attending nonpublic schools, stating that "[n]o resident of a district who is eligible for special instruction and services under this section may be denied instruction and service on a shared time basis consistent with section 126C.19, subdivision 4, because of attending a nonpublic school . . . ."  Minn. Stat. § 125A.18 (emphasis added).

. . . .

[W]e conclude that the shared-time statute, Minn. Stat. § 125A.18, is unambiguous and prohibits school districts from denying special education instruction and services to children with disabilities enrolled in nonpublic schools.  The general term "instruction and service" is restricted in its meaning by the preceding particular term, "special instruction and services."

Id. at 324–25 (emphasis added).

As for dispute resolution, Minnesota law parallels the IDEA's requirement that

parents and school districts have access to a due process hearing to resolve disputes

regarding child find issues or the provision of a FAPE.  See Minn. Stat. § 125A.091, Subd. 12.  And, there is no exception for the parents of parentally-placed private school children.  In fact, to the extent that the right to a due process hearing is discussed in the context of parentally-placed private school students, the Minnesota Statutes explicitly grant access to the IDEA's due process hearing system and complaint system to "parties serving students on a shared time basis."  Id. § 125A.18.  Moreover, in Independent School District No. 281, the Minnesota Court of Appeals indicated that the due process hearing system is available for parentally-placed private school students when it noted that disputes over special education services may be resolved through an impartial due process hearing or through the administrative complaint procedure, and that the parents of the parentally-enrolled nonpublic school student in that case had "opted for" the latter. 743 N.W.2d at 322.  Accordingly, not only are parentally-placed private school students in Minnesota entitled to a full FAPE (with the exception that the school district may determine the location at which to provide the special instruction and services), they also are entitled to a due process hearing regarding whether a FAPE was, in fact, provided.[10]

---

[10]     To the extent that MPS argues that parentally-placed private school students in Minnesota are not entitled to a FAPE because Minnesota was required to—but did not— give notice to local school districts that state requirements exceed federal requirements, that argument is flawed.  First, as R.M.M.'s parents' counsel pointed out at the hearing on this matter, the federal regulation relied upon by MPS requires notice only in the event that a state "rule, regulation, or policy" exceeds the IDEA's requirements:

> Each State that receives funds under Part B of the Act must—
>
> > (1)     Ensure that any State rules, regulations, and policies relating to this part conform to the purposes of this part;

For these reasons, the Court finds that R.M.M. was entitled to a FAPE, as well as a due

process hearing to determine whether the FAPE was provided and, therefore, that the

ALJ did not lack jurisdiction to decide R.M.M.'s FAPE claim.

### B.        Timing of Request for Due Process Hearing

Next, MPS argues that even if R.M.M. was entitled to a due process hearing on her

FAPE claims, those claims are barred under Thompson ex rel. Buckhanon v. Board of

Special School District No. 1, 144 F.3d 574 (8th Cir. 1998).  (MPS Appeal Mem. at 28.)  In

Thompson, the Eighth Circuit held that a student had no right under the IDEA to challenge

the educational services provided by a school district because he was not a student in that

school district when he requested the due process hearing.  144 F.3d at 577–78.  The court

explained that "[t]he purpose of requesting a due process hearing is to challenge an aspect of

a child's education and to put the school district on notice of a perceived problem."  Id. at

---

(2)    Identify in writing to LEAs located in the State and the
Secretary any such rule, regulation, or policy as a State-imposed
requirement that is not required by Part B of the Act and Federal
regulations; and

(3)    Minimize the number of rules, regulations, and policies to
which the LEAs and schools located in the State are subject under
Part B of the Act.

34 C.F.R. § 300.199(a) (emphasis added).  And, here, it is a Minnesota statute that
provides parentally-placed private school children with the right to a FAPE.  Second,
even if notice were required in the present circumstances, the MDE has issued at least
two memoranda in which it has acknowledged that Minnesota law exceeds federal FAPE
requirements for parentally-placed private school students with disabilities by requiring
school districts to stand ready to serve students enrolled in nonpublic schools.  (See
Schreifels Aff. [Civ. No. 15-1855, Doc. No. 21-2], Exs. 1, 3.)

579. Only then does the school district have the opportunity to address the alleged problem. Id. "If a student changes school districts and does not request a due process hearing, . . . [s]ubsequent challenges to the student's previous education become moot because the new school district is responsible for providing a due process hearing." Id.

MPS asserts that Thompson applies in this case because, prior to requesting a due process hearing, R.M.M.'s parent "dis-enrolled R.M.M. from Minneapolis Public Schools when she declined services." (MPS Appeal Mem. at 29.) In opposition, R.M.M.'s parents contend that: (1) the Court should not consider this argument because MPS raised it for the first time on appeal, (2) Thompson is contrary to the plain language and purpose of the IDEA, and (3) Thompson does not apply because—as acknowledged by MPS in its Complaint—MPS was the school district responsible for providing R.M.M. with a FAPE and a hearing at the time the administrative hearing was requested. (See Defs.' Reply Mem. in Supp. of Mot. to Dismiss [Civ. No. 15-1855, Doc. No. 16] ("R.M.M.'s Dismissal Reply"), at 3–9 & n.9.) As to this final point, R.M.M.'s parents point to the paragraphs in the Complaint in which MPS states that R.M.M. was enrolled in MPS on February 26, 2014 to receive special education services on a shared-time basis; R.M.M.'s parent withdrew consent for those services on April 30, 2014; and R.M.M. was re-enrolled in MPS prior to August 14, 2014—the day on which R.M.M.'s parents requested the due process hearing. (Id. at 8–9 (citing MPS Compl. ¶¶ 11, 16, 18).)

Despite R.M.M.'s arguments for overturning Thompson, the Eighth Circuit's opinion in that case is binding on this Court. That being said, setting aside whether MPS has improperly raised the issue for the first time on appeal, Thompson does not bar

R.M.M.'s claims because R.M.M. was a student in the MPS school district when her parents requested the due process hearing. Thus, unlike the situation in Thompson, the school district that was responsible for the allegedly problematic services (MPS) is the same school district that was responsible for the requested due process hearing (MPS). And, the request for the due process hearing would have put MPS on notice of the perceived problem with the educational services it had provided to R.M.M., and thus would have provided MPS with the opportunity to address the alleged problem. For these reasons, the Court finds that Thompson does not apply in this case.[11]

---

[11]    To the extent MPS argues that the ALJ lacked jurisdiction to hear R.M.M.'s claims because she had dis-enrolled in MPS prior to requesting a due process hearing, (see Pl.'s Mem. of Law Opposing Defs.' Mot. to Dismiss [Civ. No. 15-1855, Doc. No. 14], at 2–3),that proposition has been flatly rejected by the Eighth Circuit. In M.M. ex rel. Special School District No. 1, a student requested a due process hearing in May 2005 to challenge the special education services provided to her at a public school during the 2003-2004 school year. 512 F.3d 455, 458 (8th Cir. 2008). However, the student's parent had enrolled the student at a charter school outside of the school district for one month at the beginning of the 2004-2005 school year before re-enrolling the student in the public school. Id. at 460. Accordingly, at the time the parent requested the due process hearing, the student was enrolled in the same school district as she had been enrolled in during the 2003-2004 school year. Id. In rejecting the school district's argument that the ALJ lacked jurisdiction to hear the student's IDEA claims relating to the 2003-2004 school year because of her brief enrollment within another district, the Eighth Circuit distinguished Thompson:

> [O]ur prior cases involved students who were no longer attending school in the school district when the due process hearing was requested. . . . This was a ruling on the merits (failure to state a claim), not a denial of subject matter jurisdiction. Here, [the student] re-enrolled in the District's schools long before [the parent] requested the due process hearing. The District's argument that either the ALJ or the district court lacked jurisdiction is without merit.

Id. (citing Thompson, 144 F.3d at 579).

### C.      Compensatory Education as a Remedy

Finally, MPS argues that, even if R.M.M. had a right to a due process hearing and her claims are not barred under Thompson, the ALJ's award of compensatory education was improper.  (See MPS Appeal Mem. at 30–34.)  MPS asserts that:  (1) there can be no denial of a FAPE—and, consequently, no award of compensatory education—because MPS was not afforded an opportunity to revise R.M.M.'s ISP, (id. at 30–32); and (2) there can be no award of compensatory education because there was no demonstration that R.M.M. sustained any loss of educational benefit over the course of the few weeks in which R.M.M. received the ISP services, (id. at 33–34).  In opposition, R.M.M.'s parents argue that the basis for the compensatory education award was proper—i.e. that "the ISP [MPS] developed was flawed in its design and was incapable of providing R.M.M. with a FAPE." (Defs.' Mem. of Law in Opp. to Mot. for J. on the Record [Civ. No. 15-1855, Doc. No. 25], at 43.)  They assert that MPS is liable not only for educational harm suffered while MPS provided special education services to R.M.M., but also for the deficiencies in her prior education, and that the preponderance of evidence at the hearing demonstrated that R.M.M. requires significant remedial services to compensate for those deficiencies.  (See id. at 43–47.)

Under the IDEA, district courts—and by extension, ALJs—have broad discretion to "grant such relief as [they] determine[] is appropriate" for the denial of a FAPE. 20 U.S.C. § 1415(i)(2)(C)(3); Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 244 n.11 (2009) (noting that the U.S. Supreme Court has interpreted § 1415(i)(2)(C)(3) to authorize courts and hearing officers to award relief); Sch. Comm. of Burlington v. Dep't

of Educ. of Mass., 471 U.S. 359, 369 (1985) ("The ordinary meaning of these words

confers broad discretion on the court.").  This relief includes compensatory education.

J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist., 721 F.3d 588, 593 (8th Cir. 2013).  In

Minnesota, compensatory education may be awarded:

> if the hearing officer finds that the district has not offered or made available
> to the child a free appropriate public education in the least restrictive
> environment and the child suffered a loss of educational benefit. Such
> services take the form of direct and indirect special education and related
> services designed to address any loss of educational benefit that may have
> occurred. The hearing officer's finding must be based on a present
> determination of whether the child has suffered a loss of educational
> benefit.

Minn. Stat. § 125A.091, Subd. 21.  Thus, "[t]he purpose of compensatory education is to

replace lost educational services."  Moubry ex rel. Moubry v. Indep. Sch. Dist. No. 696,

951 F. Supp. 867, 886 (D. Minn. 1996); see Miener ex rel. Miener v. Missouri, 800 F.2d

749, 753 (8th Cir. 1986) ("[I]mposing liability for compensatory educational services on

the defendants 'merely requires [them] to belatedly pay expenses that [they] should have

paid all along.'") (citation omitted).

Although an ALJ's decision to grant appropriate relief is broad, an award of relief

is inappropriate where a school district is not afforded the opportunity to formulate or

modify an IEP to meet a student's needs.  See Schoenfeld ex rel. Schoenfeld v. Parkway

Sch. Dist., 138 F.3d 379, 382 (8th Cir. 1998).  This is because "[a] school district should

be on notice of disagreements and given an opportunity to make a . . . change."  Evans v.

Dist. No. 17 of Douglas Cnty., 841 F.2d 824, 831 (8th Cir. 1988).  "Only if it is likely

that no change would be made which would benefit [the student] (if the school district

had made it clear that no change . . . would occur), would there be a denial of a free

appropriate public education." Id. at 832. Thus, in Schoenfeld ex rel. Schoenfeld v.

Parkway School District, the Eighth Circuit determined that an award of reimbursement

for private school education costs was unwarranted because the student was withdrawn

from the public school prior to any discussion with school officials about

accommodations or the creation of an IEP. 138 F.3d at 381–82. Similarly, in I.E.C. v.

Minneapolis Public Schools, the district court affirmed the ALJ's dismissal of the

student's IDEA claim where the student was removed from the school district before an

education plan could be developed and suffered no apparent damages in the seven days in

which she was enrolled in the district. 34 F. Supp. 3d 1006, 1016 (D. Minn. 2014). And,

in Evans v. District No. 17 of Douglas County, the Eighth Circuit affirmed the denial of

relief to a student who was removed from the school district before school officials were

given the opportunity to make (or refuse to make) changes to the student's educational

placement, and "the evidence show[ed] no real unwillingness on the part of [the school

district] to change [the student's] placement for her betterment." 841 F.2d at 832.

Based on the foregoing, this Court finds that an award of compensatory education

was not inappropriate in the present matter due to either a lack of notice to MPS or a

failure to demonstrate loss of educational benefit. As to the first point, although MPS

relies heavily on Schoenfeld and I.E.C. in support of its Motion, those cases are

distinguishable from the present facts because there is no dispute that R.M.M. was not

removed from the MPS school district prior to the development and implementation of an

educational services plan. Rather, according to MPS, R.M.M.'s ISP was proposed on

January 15, 2014; she enrolled in MPS on February 26, 2014 in order to receive the ISP

shared-time services, the services were provided beginning on March 11, 2014; and

consent for the services was not withdrawn until April 30, 2014.  (See MPS Appeal Mem.

at 4–5.)  Moreover, there is evidence in the record that shows an unwillingness on the

part of MPS to make changes to the ISP.  For example, R.M.M.'s mother testified at the

due process hearing that she asked MPS personnel whether R.M.M. could get more

services and was told that the services being provided to R.M.M. were all that MPS could

offer a private school student.  (Tr. dated Dec. 2, 2014 [15-cv-1627, Doc. No. 36], at

284:1-10.)

      As to the second point, the fact that R.M.M.'s mother withdrew consent for the

ISP services after only a few sessions does not affect R.M.M.'s entitlement to

compensatory education.  According to the ALJ, in order to provide R.M.M. with a

FAPE, the February 2014 ISP needed to provide services that would "close the gap"

between R.M.M.'s then-current performance and the minimum performance expected of

a student at her grade level.  (See ALJ Final Order at 16.)  However, the ALJ concluded

that the ISP was insufficient in that regard:

> The ISP itself, as well as the testimony from the parents' expert in
> educating children with learning disabilities, shows that Student's academic
> goals were not appropriate. . . . [T]he goal in the ISP to improve the
> Student's academic performance in reading by one year in one year, when
> the Student was two to three years behind her peers, supports the finding
> that the ISP was not reasonably calculated to provide educational
> benefit. . . . Additionally, the ISP lacked any goal for math, despite her
> needs in that area.  Her goal in writing offered trivial advancement.
> Because the Student has the capacity to learn, and is in school in order to
> access the general education curriculum, the purpose of her special
> education services is to ensure she gets that access and can close the gap

between where she currently performs academically with where students her age and grade level are expected to be.

. . . .

Here, Student was denied FAPE by the ISP offered in February 2014.  It set goals that were not designed to enable the Student to be involved in and make progress in the general education curriculum, and it lacked a goal in math, one of her areas of need, altogether.  The most recent objective data about the Student's academic performance comes from the start of the 2014-15 school year, and demonstrates the student is significantly behind her peers and the general education curriculum for reading, writing, and math.  The evidence also shows that the type and intensity of services she requires to make meaningful progress is more than what she is currently receiving (and much more than what the ISP offered).  Thus, even though the services in the deficient ISP were not fully provided, and even though there is no current dispute about the Student's IEP, compensatory education is appropriate to address the denial of FAPE at issue here.  It will help correct matters to meet the purpose of the IDEA and provide the student a reasonable opportunity to be able to be minimally involved in and make progress in the general education curriculum. . . .

(Id. at 16–18.)  In other words, the ALJ concluded that the services offered in the ISP would have been insufficient to provide R.M.M. with a FAPE (because they were not designed to close the performance gap) whether or not she received them.  Thus, the loss of educational benefit—i.e., the lack of educational services designed to close the performance gap—existed even though the services were only provided for a short time. For these reasons, the Court finds that the ALJ's decision to award compensatory education was permissible.

## IV.   R.M.M.'S MOTION TO REVERSE DISMISSAL OF CLAIMS AND FOR PARTIAL REMAND

In their Motion to Reverse Dismissal of Claims and for Partial Remand, R.M.M.'s parents challenge the ALJ's October 14 and 17 Orders dismissing their child-find and

pre-January 2014 FAPE claims. (R.M.M.'s Remand Mem. at 2–6.) They ask that these claims be reinstated and remanded for adjudication in an administrative hearing. (See id. at 6.) This Motion raises pure issues of law, which this Court reviews de novo.

In dismissing the child-find claims in his October 14 Order, the ALJ stated:

> Parents' initial complaint included a claim about whether the School District failed to timely identify and evaluate Student while she was enrolled in a nonpublic school from kindergarten until February 2014. It is undisputed that Student was evaluated and determined to be a child with a disability under the [IDEA] during the 2013-2014 school year. Given the Student was identified, evaluated, and determined to be a child with a disability, the Parents' claim about untimeliness of the "child-find" process is now moot and is properly dismissed.

> There are eight general topics on which a party may file a due process hearing complaint. Complaints may be filed on proposals or refusals relating to identification, evaluation or educational placement of a child with a disability, or the provision of a FAPE to the child. Each of these topics has a logical remedy if a violation is found. For example, in a complaint about identification, if a failure to identify a child as a possible child with a disability is determined, the remedy is an initial evaluation of the child to determine whether the child is, in fact, a child with a disability. . . . In a complaint about the provision of a FAPE, if a violation is found, the logical remedy is to provide a FAPE.

> . . . .

> In this case, Parents allege Student was not timely identified and evaluated. On its face, this is a viable claim. However, the Student was identified and evaluated, so the problem was corrected. But what of the impact of the alleged failure to timely identify and evaluate Student? If there was an impact, it will be evidenced in the Student's level of academic achievement and functional performance at the time she was determined eligible. If the student is behind her peers as a result of her disability, and she is entitled to a FAPE, the program proposed by the School District will have to be evaluated to determine whether it was reasonably calculated to enable her to be involved and progress in the general education curriculum. So, was there a program offered to Student? If so, was it reasonably calculated to permit her to be involved in and make progress in the general curriculum? If the answer to either of these questions is in the negative,

there may have been a denial of FAPE which may then be remedied as appropriate to the case.

The reason that public resources should not be spent on litigating the issue of child find in this case is that it does not matter whether the denial of FAPE was the result of a failure to identify and evaluate the Student in kindergarten or later. While what constitutes a FAPE for a particular child may vary widely, the fundamentals of that FAPE are always the same: meeting the unique needs of the child resulting from her disability and ensuring she is involved in and progressing in the general education curriculum. If Student was denied a FAPE, the remedy will be designed to address that violation. A denial of FAPE "must be based on a present determination of whether the child suffered a loss of educational benefit." A present determination is reasonably based on the point in time the complaint is filed. . . . If there is a denial of FAPE, as discerned from an achievement gap resulting from a disability, a remedy may ensue. If there is reimbursement to be awarded, that may occur. If compensatory education is to be awarded, that will be "designed to address any loss of educational benefit that may have occurred." An alteration of the IEP may also be ordered, among other remedies designed to ensure the purposes of the Act.

Because the Student in this case has now been identified, the issue of identification is moot. However, this does not deny the Student a remedy for the prior harm, if indeed there was harm. Assuming the allegation that the Student was eligible as early as kindergarten is true, the denial of FAPE and remedy must be based on a present determination of educational harm. The issue now is: how is Student performing and whether a program was offered to her that was reasonably calculated to address her unique needs resulting from her disability and to enable her to be involved in and make progress in the general education curriculum. If Parents can show Student was not performing as one would expect a child in her grade, and if they can show she was not offered a program designed to address her unique needs resulting from her disability and to enable her to be involved in and make progress in the general education curriculum, then they may be able to persuade the ALJ she was denied a FAPE. They will then have the burden of showing what services, or other remedies, are necessary to provide a FAPE to the Student.

> Because Student has been determined to be a child with a disability, no further proceedings on that issue are warranted. Whether Student has been offered or refused a FAPE while at the nonpublic school is a new question . . . .

(ALJ October 14 Order at 4–6 (footnotes omitted).)

On October 17, the ALJ narrowed the FAPE claims for adjudication, stating simply:

> The issue to be determined in this case is whether the School District denied the Student a FAPE when it refused or failed to propose an individualized education program (IEP) reasonably calculated to meet Student's unique needs resulting from her disability and to enable her to be involved in and make progress in the general education curriculum, when she was determined to be a child with a disability in January 2014.

(ALJ October 17 Order at 2 (emphasis added).) Although the ALJ noted that "Parents object to this framing of the issue, asserting that it unfairly limits their claims," he "disagree[d], for the same reasons laid out in the memorandum dismissing the 'child-find' claim." (Id. at 2 n.1.)

Also relevant to the present matter are the ALJ's Findings of Fact, Conclusions of Law and Order issued after the due process hearing was completed. According to the ALJ, R.M.M.'s parents "sought to present a case about the Student's educational history and framed [it in] terms of a failure to timely identify and evaluate the [S]tudent," but:

> [i]n this case, it matters not what road the Student took to get to where she was when the original due process complaint was filed in August 2014. What mattered was the services that were offered to the Student to address her needs resulting from her disability and whether the program and services were reasonably calculated to enable the Student to be involved in and make progress in the general education curriculum.

(ALJ Final Order at 13.) Thus, as indicated in the October 17 Order, the ALJ considered only whether the ISP offered to R.M.M. in February 2014 denied her a FAPE. (See id. at

14–18.)  Because he found that it did, the ALJ awarded R.M.M. six months of

compensatory education:

> 9.  Compensatory education, a remedy for loss of educational benefit, "must
> be based on a present determination of whether the child has suffered a loss of
> educational benefit."  Compensatory education must be "designed to address
> any loss of educational benefit that may have occurred."  Thus, compensatory
> education is to bridge the gap between the educational progress expected of a
> child with appropriate services and the educational progress actually
> achieved, at or near the time of the ALJ's review of and determination of the
> dispute.
>
> 10.  Student is entitled to compensatory education designed to address her
> loss of educational benefit.  The most recent objective data on Student's
> academic performance, from August 2014, shows she was currently
> performing at or near the 2nd percentile in reading, by far her most deficient
> area, and below the 25th percentile in both writing and mathematics.
> Compensatory education services to help her close the gap between that
> performance level and where she would be minimally expected to be at the
> start of the 2015-2016 school year (reading, writing, and conducting math at
> the 6th grade level) are to be provided between the date of this order and the
> start of the next school year.

(Id. at 11 (footnotes omitted).)

According to R.M.M.'s parents, in dismissing their child-find claims, the ALJ

improperly limited the relief available under the IDEA for child-find violations to the

provision of an evaluation, regardless of the length of the delay or the amount of harm

suffered.  (R.M.M.'s Remand Mem. at 7.)  They argue that his decision must be reversed

because:  (1) child-find claims are not rendered moot by the provision of an evaluation,

(id. at 8–9); (2) the IDEA allows for a due process hearing regarding child-find violations

resulting from a school district's failure to act, (id. at 9–14); and (3) the IDEA authorizes

any "appropriate" relief even if an evaluation is conducted, (id. at 14–19).  R.M.M.'s

parents also argue that R.M.M. was "entitled to a [FAPE] from MPS Defendants during

the period of her eligibility for special education services" and that the dismissal of her

pre-January 2014 FAPE claims should be reversed.  (See Pls.' Reply Mem. to Reverse

Dismissal of Claims and for Partial Remand [Civ. No. 15-1627, Doc. No. 45], at 8.)  In

this regard, R.M.M.'s parents again argue that the IDEA and Minnesota law entitle

private school students to a FAPE and a hearing to challenge an alleged denial of a

FAPE.  (See id. at 3–8.)

For its part, MPS reiterates its arguments that private school students are not

entitled to a FAPE or a due process hearing on the issue of FAPE.  (See MPS's Resp. to

Pls.' Mot. to Reverse Dismissal of Claims and for Partial Remand [Civ. No. 15-1627,

Doc. No. 42], at 2–4, 9–19.)  As for child find, MPS states in its briefing on this matter

only that R.M.M.'s parents were entitled to—and did—have their child-find claims heard

in a due process hearing, and that the ALJ correctly dismissed those claims as moot.  (Id.

at 18.)  At the hearing on this matter, MPS further argued that, because a private school

student is entitled only to child find and not a FAPE, that student has no claim once an

evaluation occurs because timeliness of the child-find process is relevant only for those

students entitled to a FAPE.

The Court already has addressed the parties' FAPE-related arguments and has

determined that Minnesota school districts are required to provide a FAPE to parentally-

placed private school students on a shared-time basis, and that parents of such students

are entitled to a due process hearing as to whether a FAPE was, in fact, provided.

Accordingly, the only issues remaining for resolution on this Motion are:  (1) whether a

child-find violation may be found based on a school district's failure to act; and

(2) whether child-find claims are rendered moot by the provision of an evaluation, or if the IDEA provides for additional forms of relief for child-find violations.

The IDEA's "child-find obligations" stem from its requirement that, as a condition of receiving federal funding, "[a] State [have] in effect policies and procedures to ensure that . . . [a]ll children with disabilities residing in the State, including . . . children with disabilities attending private schools, . . . are identified, located, and evaluated." 20 U.S.C. § 1412(a)(3)(A). The IDEA also provides that a parent has the right to a due process hearing "with respect to any matter relating to the identification, evaluation, or educational placement of the child." Id. § 1415(b)(6) (emphasis added); see id. § 1415(f)(1)(A). Thus, a parent may challenge not only a school district's affirmative child-find actions—e.g., proposals for educational placement or refusals to conduct an evaluation—but also its failures to act. See Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 245 (2009) ("A reading of the Act that left parents without an adequate remedy when a school district unreasonably failed to identify a child with disabilities would not comport with Congress' acknowledgment of the paramount importance of properly identifying each child eligible for services.") (emphasis added). Although some Circuits consider child-find obligations to be merely "procedural" requirements, the Eighth Circuit has not explicitly made this determination. See Indep. Sch. Dist. No. 413 v. H.M.J. ex rel. A.J., ___ F. Supp. 3d ___, Civ. No. 14-2114 (JRT/HB), 2015 WL 4744505, at *9 (D. Minn. Aug. 11, 2015) (citing D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist., 629 F.3d 450, 453 (5th Cir. 2010); Bd. of Educ. of Fayette Cnty v. L.M., 478 F.3d 307, 313 (6th Cir. 2007)). However, even procedural violations are

35

actionable in the Eighth Circuit where "[the] procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parent's opportunity to participate in the formulation process, or caused a deprivation of educational benefits." K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15, 647 F.3d 795, 804–05 (8th Cir. 2011) (citation and internal quotation marks omitted).

When an IDEA violation occurs, there are several forms of relief available, including compensatory education, reimbursement for private educational expenses, and attorneys' fees.  See 20 U.S.C. § 1415(i)(2)(C)(iii) (stating that "the court . . . shall grant such relief as the court determines is appropriate"); J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist., 721 F.3d 588, 593–94 (8th Cir. 2013) (stating that compensatory education, attorneys' fees, and reimbursement for private educational services are forms of relief available under the IDEA).  Thus, the provision of an evaluation does not necessarily render a child-find claim moot.  Boose v. District of Columbia, 786 F.3d 1054, 1058 (D.C. Cir. 2015).  As the District of Columbia Circuit Court of Appeals recently explained in Boose v. District of Columbia, an evaluation and IEP do not satisfy a request for compensatory education because the former are forward-looking and consider the child's present abilities, while the latter are meant to make up for prior deficiencies.  786 F.3d at 1058.  Accordingly, the provision of an evaluation does not render a child-find claim moot where the child seeks—but has not received—compensatory education.  Id.

Another court within this District applied these concepts to a child-find claim in M.J.C. ex rel. Martin v. Special Sch. Dist. No. 1, No. Civ. 10-4861 (JRT/TNL), 2012 WL 1538339 (D. Minn. Mar. 30, 2012).  The student in that case, M.J.C., was determined to

be eligible for special education services in June 2009, at the end of his seventh-grade year.  Id. at *4.  However, his teachers had expressed concerns as early as kindergarten about his ability to learn, and although M.J.C. was evaluated multiple times during grade school and middle school pursuant to his mother's requests, the school district repeatedly determined that M.J.C. was not eligible for services at those times.  Id. at *1–3.  M.J.C.'s mother requested an administrative hearing in 2010, alleging that the school district had failed to provide M.J.C. with a FAPE.  Id. at *1.  The hearing officer denied the claim, finding that the school district had "at all times provided M.J.C. with a FAPE."  Id.

M.J.C. raised two issues on appeal to the district court:  (1) whether the school district violated the IDEA by failing to identify M.J.C. as a child with a disability prior to June 2009; and (2) whether the special education services commenced after June 2009 provided M.J.C. with a FAPE.  Id.  As for the first issue, the court concluded that the school district's failure to "fully evaluate" M.J.C. or to formally propose evaluations prior to June 2009 constituted violations of the district's child-find obligations, and that the violations "[were] not merely procedural."  Id. at *8.  The court explained:

> Because the District failed to comply with its child find obligations, there was an uncharacteristic delay in evaluating M.J.C. that denied him a FAPE through the end of the 2008-2009 school year.  Although M.J.C. made slight academic progress before he received special education services, his overall academic progress was poor, including some areas of decline, and his behavioral progress was nonexistent.  M.J.C. faces significant challenges that are due, at least in part, to the District's failure to engage in its child find obligations.

Id. at *11.  Accordingly, although the court concluded that the post-June 2009 special education services provided M.J.C. with a FAPE, id., the court granted M.J.C.'s motion

for judgment on the administrative record with regard to the pre-June 2009 child-find claim and remanded the matter to the ALJ for a determination of what compensatory education M.J.C. was due, id. at *12.

Based on the foregoing, this Court finds that a child-find violation may be found based on a school district's failure to act, that there is a corresponding right to a due process hearing on such a claim, and that child-find claims are not necessarily rendered moot by the provision of an evaluation.  Rather, a student may also be entitled to compensatory education to remedy a child-find failure.  Applying those rules here, R.M.M.'s parents are entitled to a due process hearing on their child-find and pre-January 2014 FAPE claims alleging that MPS failed to identify R.M.M. as a student with a disability and to provide her with a FAPE.  And, the fact that R.M.M. was eventually identified and evaluated does not render her child-find claims moot because R.M.M.'s parents also seek relief in the form of pre-January 2014 compensatory education.  (See, e.g., R.M.M.'s Compl. ¶ 120.)  Neither does the fact that the ALJ awarded R.M.M. six months of compensatory education render the claims moot because that award was made in regard to the post-January 2014 FAPE claim and without explicitly considering the amount of time and services needed to compensate R.M.M. for the lack of special education that she received prior to that time.  Accordingly, R.M.M.'s dismissed claims will be remanded for adjudication.

V.      **CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT**:

1.      Defendants' Motion to Dismiss [Civ. No. 15-CV-1855, Doc. No. 8] is
        **GRANTED**;

2.      Plaintiff's Motion for Judgment on the Administrative Record [Civ. No. 15-
        CV-1855, Doc. No. 18] is **DENIED**;

3.      Case No. 15-CV-1855 is **DISMISSED**; **LET JUDGMENT BE ENTERED
        ACCORDINGLY**;

4.      Plaintiffs' Motion to Reverse Dismissal of Claims and for Partial Remand
        [Civ. No. 15-CV-1627, Doc. No. 33] is **GRANTED**;

5.      The child-find and FAPE claims dismissed by the Administrative Law Judge
        in his October 14 and October 17, 2015 Orders are reinstated for adjudication
        and are **REMANDED** to the Minnesota Department of Education to schedule
        and conduct an administrative hearing on those claims; and

6.      Within ten days of the date of this Memorandum Opinion and Order, the
        parties shall file letters, of no more than two pages in length, explaining to
        the Court their proposals for proceeding with the discrimination claims that
        remain pending in Case No. 15-CV-1627.


Dated:  February 8, 2016                    s/Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge